THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 Paul Mazzell, Appellant.
 
 
 

Appeal From Charleston County
 Thomas L. Hughston, Jr., Circuit Court Judge

Opinion No. 2005-UP-621
Heard November 7, 2005  Filed December 9, 2005   

AFFIRMED

 
 
 
 Michael W. Sautter and O. Grady Query, of Charleston, for Appellant.
 Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Ralph E. Hoisington, of Charleston, for Respondent.
 
 
 

PER CURIAM:  Paul Mazzell was convicted in 1983 of murder, criminal conspiracy, and kidnapping.  He appeals the circuit courts denial of his 1997 motion for a new trial based upon after-discovered evidence.  We affirm.
 FACTS
Ricky Seagraves was abducted and murdered near Charleston in 1978. The police did not recover his body until 1981, when investigators received information from Danny Hogg.  Hogg admitted he participated in Seagraves abduction, but he also implicated Mazzell and Edward Merriman in the crime.  In exchange for immunity from prosecution for his role in the abduction and other crimes, Hogg agreed to testify against Mazzell and Merriman.  Additionally, Hogg led investigators to the site where Seagraves body was buried.
The State sought the death penalty against Mazzell, who Hogg identified as the triggerman in the murder.  Mazzell was tried along with his co-defendant Merriman.  The State maintained that Seagraves, Hogg, and Merriman all worked for Mazzell.  Allegedly, they were all connected to the Charleston drug trade.  The State presented evidence that Mazzell wanted Seagraves killed; therefore, he instructed Hogg and Merriman to abduct and deliver Seagraves to him, and then he killed Seagraves.
Hogg testified that Mazzell put a contract on Seagraves life.  According to Hogg, Mazzell announced, Go get Ricky. Bring him to me. Im going to kill him. Hogg and Merriman located Seagraves at a convenience store near Charleston.  Hogg testified he heard a gunshot and saw Merriman chase Seagraves into the convenience store.  Seagraves was then beaten, dragged back to the truck, and delivered to Mazzell.  Mazzell allegedly killed Seagraves and buried his body.  Two witnesses corroborated Hoggs version of the incident.  Carl Hines testified that Mazzell declared in late 1978 that he intended to kill Seagraves, and Mazzell later boasted that he had killed him.  Harold Behrens also testified that Merriman recounted the abduction and murder to him, giving a description that was consistent with Hoggs testimony.
In defense, Mazzell brought out Hines and Behrens past criminal activity and noted that numerous prosecution witnesses received special treatment from the State in exchange for their testimony.  Mazzells attorney particularly assailed Hoggs credibility by presenting witnesses who testified that Hogg and Mazzell had a falling out.  They also testified that Hogg said he would get back at Mazzell by killing him or putting him in jail.  Two defense witnesses specifically claimed Hogg admitted he shot and killed Seagraves.  
Additionally, Mazzells wife testified that Hogg was at their home on the night of Seagraves abduction and that he stated he intended to find Seagraves.  She also provided alibi testimony for Mazzell, stating that she and Mazzell went to bed early that night, after watching television at home.  Mazzell did not take the stand to offer testimony in his defense.  
In February 1983, a jury convicted Mazzell of murder, criminal conspiracy, and kidnapping.  The jury recommended life in prison instead of the death penalty as requested by the State.[1]
Mazzell filed a direct appeal, along with his co-defendant Merriman, in which he raised numerous improprieties and misconduct by the State and the prosecutor.  Additionally, he argued for a new trial because the court refused to allow into evidence the fact Hogg had to take a polygraph test as part of his immunity agreement.  
This court found some of the allegations of police threats and intimidation to be without evidence, and found the deliberate release of misinformation to the media to be horrendous and ridiculous, but found it did not affect the trial in a prejudicial manner.  State v. Merriman, 287 S.C. 74, 79-80, 337 S.E.2d 218, 222 (Ct. App. 1985).  This court also found the trial courts curative instruction, after the prosecutors had elicited improper testimony, was sufficient to remedy any harm it caused.  Id. at 83, 337 S.E.2d at 224.  Finally, the court found the refusal to admit the entire immunity agreement, especially the portion regarding the polygraph testing, was proper given the general inadmissibility of the polygraph test and the fact that it would be cumulative to other evidence in the record.  Id. at 87-88, 337 S.E.2d at 226-27.  Thereafter, the South Carolina Supreme Court denied Mazzells petition for writ of certiorari.  
In 1988, Mazzell filed an application for post-conviction relief (PCR).  In his application, he claimed, among other things, that Merriman testified at his own PCR action that Hogg committed the murder and not Mazzell.  He maintained this testimony was unavailable at the original trial because Merriman asserted his Fifth Amendment privilege against self-incrimination.  The court denied PCR relief and Mazzells separate petition for a writ of certiorari was also denied.
Mazzell then filed a petition for writ of habeas corpus with the United States District Court for South Carolina in 1990.  The petition was granted by the District Court in 1995 on the grounds that Mazzells attorney failed to object to erroneous jury instructions.  The Fourth Circuit Court of Appeals reversed this decision.  Mazzell v. Evatt, 88 F.3d 263 (4th Cir. 1996).  On remand to the district court, Mazzels petition for writ of habeas corpus was denied.
In January 1997, Mazzell filed the underlying motion for a new trial.  In November 2000, Mazzell filed to have access to the prosecutions file for inspection of its documents and noted the disappearance of SLEDs investigative file.  At the hearing on his new trial motion, Mazzell asserted that several possible witness interviews brought to light new evidence that exonerated him.  Additionally, he maintained the court should consider polygraph evidence regarding himself, Merriman, and Hogg.  He also argued that several items contained in the prosecutions file were new evidence because he alleged they were not turned over to defense counsel.  Finally, Mazzell maintained prosecutorial misconduct, combined with the evidence brought forth at the hearing, justified a new trial.  The parties each submitted a post-hearing memorandum.  Mazzell also filed a Motion for Alternative Consideration of Evidence as Warranting Issuance of the Writ of Habeas Corpus.
The trial judge requested an order from the Attorney Generals office.  Mazzells counsel filed objections to the proposed order; therefore, the judge entered his own order in which he detailed the procedural and factual history of the case.  The order then stated:

 In Hayden v. State, the South Carolina Supreme Court reviewed the criteria necessary to grant a new trial on newly discovered evidence.  The Court explained:  [a] party requesting a new trial based on after-discovered evidence must show that the evidence:  (1) is such as would probably change the result if a new trial was had; (2) has been discovered since the trial; (3) could not by the exercise of due diligence have been discovered before the trial; (4) is material to the issue of guilt or innocence; and, (5) is not merely cumulative or impeaching.  [Hayden v. State, 299 S.E.2d 854 (S.C. 1983) (citing State v. Caskey, 256 S.E.2d 737 (S.C. 1979)).]  The applicant failed to satisfy any of the above criteria and his Motion is Denied.

This appeal followed.

 STANDARD OF REVIEW 
The denial of a motion for a new trial will not be reversed absent an abuse of discretion.  State v. South, 310 S.C. 504, 507, 427 S.E.2d 666, 668 (1993).  An abuse of discretion occurs when a trial courts decision is unsupported by the evidence or controlled by an error of law.  State v. Hughes, 346 S.C. 339, 342, 552 S.E.2d 35, 36 (Ct. App. 2001).
 LAW/ANALYSIS 
 I.  Trial Courts Order 

 Mazzell contends this court should remand the case to the trial court because the trial judge failed to provide sufficient findings of fact and conclusions of law in the order denying Mazzells motion for a new trial.  We disagree.
 The trial judges order, while brief, was complete.  It provided a statement of the grounds the judge considered, as well as the standard under which he considered the alleged new evidence.  The judge then specifically found:  The applicant failed to satisfy any of the above criteria and his motion is denied.  Therefore, we find the order did not fail to provide sufficient findings of fact and conclusions of law because the trial judges decision can be adequately reviewed by this court for a determination of whether he abused his discretion in denying Mazzell a new trial based on after-discovered evidence.
 II.  After-Discovered Evidence
 Mazzell asserts he is entitled to a new trial because of the after-discovered evidence he put forth at the new trial hearing.  
 Pursuant to Rule 29(b), SCRCrimP: 
 
 A motion for a new trial based on after-discovered evidence must be made within a reasonable period of time after the discovery of the evidence; provided, however, that a motion for a new trial based on after-discovered evidence may not be made while the case is on appeal unless the appellate court, upon motion, has suspended the appeal and granted leave to make the motion.   
 
 To obtain a new trial based on after-discovered evidence, the party must show that the evidence:  1) would probably change the result if a new trial were granted; 2) has been discovered since trial; 3) could not have in the exercise of due diligence been discovered before trial; 4) is material to the issue of guilt or innocence; and 5) is not merely cumulative or impeaching.  State v. Spann, 334 S.C. 618, 619-20, 513 S.E.2d 98, 99 (1999).
 A.  Merriman testimony and polygraph
 Mazzell asserts the testimony provided by Merriman at Merrimans PCR hearing constitutes after-discovered evidence.  We disagree.
 Evidence presented, which was known to the defendant at the time of his trial, cannot be considered new evidence for purposes of receiving a new trial.  See Hayden v. State, 278 S.C. 610, 612, 299 S.E.2d 854, 855-56 (1983).  Additionally, because an individual refuses to testify at trial does not make his later testimony new evidence.  See, e.g., United States v. Dale, 991 F.2d 819, 839 (D.C. Cir. 1993) (finding majority of circuits considering the issue have found testimony is not new evidence because the declarant refused to testify at trial).
 At Mazzells PCR hearing, Merriman testified that Hogg killed Seagraves.  He also stated Mazzell never ordered them to find Seagraves or to bring Seagraves to him.  He explained that Seagraves was dead before they delivered him to Mazzell, though he admitted he did not know for certain that he was dead.  The PCR court found his testimony lacked credibility and denied Mazzells request for PCR relief based on the alleged after-discovered evidence.
 Merriman died prior to the new trial motion hearing and several former investigators testified regarding conversations with Merriman.  SLED Agent Lovat Faircloth testified that in 1987 Merriman indicated Hogg killed Seagraves.  Faircloth stated Merriman told him Mazzell was only involved in the disposal of the body.
 Evidence was presented that in 1993 Merriman told SLED Agent Ron Cook that he is almost positive that Ricky Seagraves was dead by the time they arrived at the house and that he never saw Mazzell at the house or knew what happened after he left.  Cook reported that Merriman stated Hogg killed Seagraves and Merriman was with him when Hogg shot Seagraves.
 Additionally, in 1993, Merriman took a polygraph test to verify that he witnessed Hogg shoot Seagraves and that he did not witness Mazzell shoot Seagraves.  The polygraph report indicates no deception on Merrimans part.
 First, this evidence is not new evidence because Mazzell knew it at the time of trial.  Additionally, it is not likely to change the result.  Merriman testified he did not know for certain that Seagraves was dead.  He also told investigators he did not know what happened after he left the house or where they took Seagraves.  Hogg testified at trial that Merriman was not present when Mazzell shot Seagraves.  Although Merrimans testimony that he did not know what happened to Seagraves is confirmed by a polygraph, it is not likely to change the result of the trial.  Accordingly, we find Merrimans testimony and polygraph are insufficient to support a claim for a new trial based upon after-discovered evidence.
 B. Thaddeus Mazzell testimony
 Mazzell contends the testimony of his brother, Thaddeus Mazzell, is new evidence warranting a new trial because the testimony exonerates him for the murder of Seagraves.  We disagree.
 Thaddeus refused to testify at Mazzells new trial hearing unless he was given immunity.  As a result, Mazzell introduced testimony by his attorneys relating to information given to them by Thaddeus.  Additionally, Officer Melvin Ballew testified about his interviews of Thaddeus on two separate occasions.
 Ballew testified he interviewed Thaddeus in 1993 and 1996.  In 1993, Ballew testified Thaddeus told him that he was present when Danny Hogg was at [Mazzells] house earlier that evening; that he wanted to go get - - wanted to try to find Ricky and that Paul told him to leave Ricky alone.  According to Ballew, Thaddeus said he and Mazzell were both present when Hogg and Merriman delivered the body to the house.  Thaddeus told Ballew that Seagraves was dead as a hammer. 
 Ballew testified that at the second interview in 1996, Thaddeus relayed a similar story regarding the events on the night of Seagraves murder.  Additionally, Ballew stated that Thaddeus told him Hogg and Seagraves had an ongoing feud and that was why Hogg wanted to get Seagraves.
 Mazzells attorney, Keir Weyble, also testified about an interview he had with Thaddeus in 2001.  He described similar statements by Thaddeus regarding the events of the night of the murder.  He stated Thaddeus told him that he received a call from Mazzell to pick up Mazzell because Hogg got Ricky [Seagraves].  According to Weyble, Thaddeus explained that as he and Mazzell were walking up the driveway, Hogg and Merriman arrived with what they later found out was the dead body of Ricky Seagraves.  Weyble testified: Thaddeus description of Mr. Seagraves at that time was that he was, and I remember this quote because it struck me, dead as a hammer when he hit the ground.  Finally, he relayed Thaddeus statement that he and Mazzell disposed of the body. 
 First, the evidence must have been discovered since the trial and could not have, in the exercise of due diligence, been discovered before trial.  Spann, 334 S.C. at 619, 513 S.E.2d at 99.  This evidence fails both requirements because the testimony clearly indicates Mazzell should have had knowledge of the testimony as Thaddeus testified he and Mazzell were both present when Seagraves was delivered.  Additionally, Mazzell claimed in his Application for Federal Habeas relief that one of the claims in his PCR application was [t]he applicants trial counsel unreasonably failed to call Thaddeus Mazzell as a defense witness, despite the fact that Thaddeus Mazzell was available and his testimony would have exculpated the applicant.[2] 
 It is unlikely that this testimony would have changed the result of the trial.  Both Ballew and Weyble indicated that Thaddeus never ensured Seagraves was dead when Hogg delivered his body.  The testimony presented at trial indicated Seagraves was hurt when Hogg and Merriman abducted him from the convenience store.  Nothing in Thaddeus testimony indicates that Seagraves was not merely unconscious when he was removed from the truck.  
 Finally, the testimony of Thaddeus lacks sufficient credibility to determine that it would have changed the outcome of the trial.  See Hayden, 278 S.C. at 612, 299 S.E.2d at 855-56 (finding the credibility of a witness is a factor in determining whether testimony will likely change the result at the new trial).  Thaddeus is Mazzells brother and was admittedly involved in the disposal of the body.  Accordingly, we find the trial court did not abuse its discretion in refusing to grant a new trial based on the proposed testimony of Thaddeus Mazzell.
 C. Pre-trial Statements by Lisa Hogg and William Poindexter
 Mazzell contends the States suppression of pre-trial statements by Lisa Hogg and William Poindexter requires a new trial.  He also contends this evidence constitutes newly discovered evidence because it was not turned over by the State before trial.  We disagree.
 We must first discuss the implications of Mazzells claims under Brady v. Maryland, 373 U.S. 83 (1963), and Rule 5, SCRCrimP.  A Brady claim is based upon the requirement of due process.  Such a claim is complete if the accused can demonstrate (1) the evidence was favorable to the accused, (2) it was in the possession of or known to the prosecution, (3) it was suppressed by the prosecution, and (4) it was material to guilt or punishment.  Gibson v. State, 334 S.C. 515, 524, 514 S.E.2d 320, 324 (1999).  Rule 5 requires:  
 
 Upon request of the defendant the prosecution shall permit the defendant to inspect and copy books, papers, documents, . . . , or copies or portions thereof, which are within the possession, custody or control of the prosecution, and which are material to the preparation of his defense or are intended for use by the prosecution as evidence in chief at the trial, or were obtained from or belong to the defendant.
 
 Rule 5(a)(1)(C), SCRCrimP.  
 At Mazzells PCR hearing, the prosecutor testified he received a motion for disclosure of the prosecutions documents from Mazzells counsel and he made the States file available to him.  Mazzell has not presented any evidence to refute this assertion by the prosecutor, nor was this statement challenged after the PCR hearing.  The only evidence in the record indicates the State complied with the requirement to turn over the evidence to the defense.  Moreover, at trial, Mazzells counsels cross-examination of Hogg supports a strong inference that Mazzell was aware of this information.  
 Next, we must determine if either document meets the requirements of State v. Spann, 334 S.C. 618, 619-20, 513 S.E.2d 98, 99 (1999), as after-discovered evidence sufficient to warrant a new trial.  The first document is the prosecutions interview sheet with Lisa Hogg.  In the interview as recorded on the sheet under the category PROBLEMS, Lisa indicated Hogg did the killing and said it was all a big accident.  Additionally, the notes on the interview sheet read:  That Ricky started shooting.  Hid body at ballpark.  That Ricky fired first.  Under the column STRATEGY the sheet reads Dont C, which is struck through three times.
 The second document is a written statement given by William Poindexter.  In his statement, Poindexter asserts that only Hogg came to visit Harry Chestnut at work to discuss something out of his earshot.  He testified it was the only time he saw Hogg and Chestnut together while Chestnut was working for him.  Poindexters statement contradicts testimony given at trial by Chestnut and Hogg that Hogg, Merriman, and Mazzell all met with Chestnut at the job site and discussed the whereabouts of Seagraves.
 As discussed above, according to the prosecutor, both documents were made available to Mazzell prior to trial.  As such, they cannot be considered after-discovered evidence.  Additionally, Mazzells counsel cross-examined Hogg regarding whether he told Lisa that he killed and buried Seagraves.  He was also cross-examined about any conversations he had with Lisa about Seagraves firing shots at Hogg first.  It appears the information contained in the Lisas interview sheet and Poindexters written statement was clearly available to the defense at the time of the trial.  Accordingly, we find the evidence is not after-discovered evidence as required by Spann.
 D.  Polygraph Results of Mazzell, Merriman, and Hogg
 Mazzell contends the polygraph results of Mazzell, Merriman, and Hogg constitute new evidence and should, in conjunction with the testimonial evidence, be sufficient to grant him a new trial.  We disagree.
 Even if a new trial is granted, the newly discovered evidence must be admissible in the new trial.  Our supreme court has often held the results of polygraph examinations are generally not admissible because the reliability of the tests is questionable.  See State v. Council, 335 S.C. 1, 23-24, 515 S.E.2d 508, 519-20 (1999); see also, State v. Wright, 322 S.C. 253, 471 S.E.2d 700 (1996); State v. Copeland, 278 S.C. 572, 300 S.E.2d 63 (1982).  
 In South Carolina, the court must evaluate scientific evidence under Rule 702, SCRE[3], and the factors established in State v. Jones, 273 S.C. 723, 731-32, 259 S.E.2d 120, 124-25 (1979).  In considering the admissibility of scientific evidence under the Jones standard, the Court looks at several factors, including:  (1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures.  Council, 335 S.C. at 19, 515 S.E.2d at 517.
 Mazzell offered the testimony of Timothy Williams, a polygraph examiner, to establish the requirements of Jones.  Williams testified that there have been conclusive studies done to establish the reliability rates of polygraph examinations.  Additionally, he described the quality control procedures used by various examiners to insure the accuracy of the exam.  However, Williams admitted there is dispute in the community about which techniques of quality control to use.  He consented that the reliability rates were established in laboratory settings and were not obtained from research of real-life polygraph exams.  Finally, he stated there is at least one manual detailing how to defeat a polygraph test.
 We find the testimony by Williams fails to establish the polygraphs admissibility under Jones.  The testimony establishes that much of the exam is art and not science and subject to the interpretations of the examiner.  His testimony indicated, and he admitted, that an examiner could challenge the results of another examiner.  We conclude Williams has failed to identify a consistent and accepted testing standard.  Therefore, we find the results of the polygraphs administered in this case do not meet the requirements of Rule 702 and Jones.
 Even if this court were to conclude the polygraphs could be admitted at a new trial, they were merely cumulative to other evidence or impeaching of the States witnesses and do not speak to Mazzells guilt or innocence.  The defense spent considerable effort to discredit Hogg as a State witness, as this court found in Mazzells direct appeal on whether the polygraph of Hogg should be admitted in conjunction with the immunity agreement: 
 
 Finally, we are of the opinion that the polygraph results would not in any reasonable likelihood have affected the judgment of the jury as to Mazzells guilt or innocence.  [citation omitted]  Mazzell apparently sought admission of the polygraph agreement and results to attack Hoggs credibility as a witness and to show Hogg actually killed Seagraves.  However, Hoggs credibility was thoroughly impeached by other evidence, including his past criminal record, his own admission that he had given false testimony in a previous trial, and his admission that he was testifying in exchange for immunity which would be revoked if he turned out to be the triggerman in the Seagraves murder.  The solicitor himself acknowledged to the jury that Hogg was not a believable person.  Admission of the results of Hoggs polygraph examination would have been merely cumulative to the other evidence impeaching his credibility.  Likewise other evidence was presented to the jury to prove Hogg killed Seagraves.  Three witnesses testified that Hogg admitted he shot Seagraves.  This testimony, had the jury believed it, was far better evidence of Hoggs guilt than results of a polygraph which indicated deception.    
 
 Merriman, 287 S.C. at 88, 337 S.E.2d at 226-27.  The same conclusion can be reached in regards to Merrimans and Mazzells polygraphs.  Accordingly, we find the polygraph evidence fails the requirements for granting a new trial based upon after-discovered evidence.
 III. Alternative Consideration for Writ of Habeas Corpus
 Mazzell contends the trial court erred in failing to view his motion as a petition for a writ of habeas corpus and in not granting relief.  We disagree.
 Pursuant to Gibson v. State, 329 S.C. 37, 41, 495 S.E.2d 426, 428 (1998), habeas corpus is available only when other remedies, such as Post-Conviction Relief, are inadequate or unavailable.  Additionally, in Simpson v. State, 329 S.C. 43, 46, 495 S.E.2d 429, 431 (1998), the South Carolina Supreme Court held a petition for a writ of habeas corpus cannot be used as a substitute for an action under the Uniform Post-Conviction Procedure Act.  Finally, in Simpson, the court concluded, a matter which is cognizable under the Act may not be raised by a petition for a writ of habeas corpus before the circuit or other lower courts.  Id.
 The contentions raised by Mazzell could be considered for relief other than habeas corpus.  The allegations of misconduct were raised on direct appeal and considered by this court.  Consideration of his new trial evidence was made pursuant to his motion under Rule 29, SCRCrimP, or could be raised in PCR.  Because Mazzell had other remedies and failed to explain why those remedies were either unavailable or inadequate, the trial court did not err in refusing to grant Mazzells alternate request for the issuance of a writ of habeas corpus.
 AFFIRMED.
 HEARN, C.J., SHORT, JJ., and CURETON, A.J., concur. 

[1] The above facts are taken from the Fourth Circuit Court of Appeals opinion in Mazzell v. Evatt, 88 F.3d 263, 265-66 (1996).
[2] It does not appear to us that this claim was actually raised by Mazzell in his PCR application; however, the allegation in his petition for habeas relief would still provide evidence that the testimony was not after-discovered evidence sufficient to warrant a new trial.
[3] Rule 702 states:  If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.