## 20186

The STATE, Respondent, v. Christine WILLIAMS et al., Appellants.

(223 S. E. (2d) 38)

*Roy T. Stuckey, Esq.,* of ·Columbia, *for Appellants,*

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Joseph R. Barker, Asst. Atty. Gen.,* of Columbia, and *Mike S. Jolly, Sol.,* of Union, *for Respondent,*

March 10, 1976.

LITTLEJOHN, Justice:

Christine Williams, James A. Kennedy, and his brother
Gary L. Kennedy were indicted for the crime of armed rob-
bery and convicted by a jury in the York County Court of
General Sessions. James Kennedy and Christine Williams
were sentenced to 25 years, and Gary Kennedy was sen-
tenced to 20 years.

All three have appealed their convictions, asserting error
in seven particulars, as follows:

1. That there was insufficient evidence to support a con-
viction of armed robbery.

2. Deprivation of the defendants' right to a fair trial by
the introduction of prejudicial testimony of the robbery vic-
tim's murder,

3. That the trial judge gave an erroneous definition of
armed robbery in his charge to the jury,

4. The failure of the trial judge to submit an alternative
verdict of robbery,

5. Failure of the trial judge to grant a new trial when it
was learned that some jurors may have served at a previous
trial of James Kennedy,

6. Deprivation of defendants' right to effective assist-
ance of counsel on appeal due to the lack of a record of the
closing arguments of counsel, and

7. Ineffective assistance of counsel at trial.

After careful consideration of the record in this case, we
overrule defendants' exceptions and affirm the lower court's
verdict.

Robbery is a felony at common law. The punish-
ment for plain robbery, or what we sometimes call
highway robbery, is imprisonment for not more than
ten years. Section 16-333, Code of Laws of South Carolina
(1962) as amended (1975 Supp.), provides that when a
robbery is committed "while armed with a pistol," the pen-

alty may be as much as twenty-five years imprisonment at the discretion of the judge. We refer to this as "armed robbery." Appellants concede that there is ample evidence to convict of common law or highway robbery, but submit that the evidence does not warrant a finding that the robbery was committed while armed with a pistol. If this contention is correct, the verdict of the jury cannot stand.

It is a well-settled rule that on appeal from a refusal to direct a verdict of not guilty, we must view the evidence, and all the inferences that may reasonably be drawn therefrom, in a light most favorable to the State. *State v. Wharton,* 263 S. C. 437, 211 S. E. (2d) 237 (1975). We review the evidence adduced at the trial in light of this rule.

It appears that the victim, "Boy" Burris, was taken to a liquor store by his friend, Tommy Sitgraves, late in the afternoon or early evening of May 1, 1974. While there, Burris cashed a check in the amount of some three hundred dollars. The defendant Christine Williams was also at the liquor store and commented upon the fact that Burris had a lot of money and that she was "going to get some of that money." Waiting in the Williams' car, just outside the liquor store, were her friends Sophia White, Lula Murray and Gussie Kennedy. Gussie Kennedy is the mother of defendants James Kennedy and Gary Kennedy. James Kennedy was Christine Williams' boy friend. As the Sitgraves' car and the Williams' car were about to leave, Christine Williams asked Sitgraves where Burris lived. He responded by telling her that Sophia White could tell her. Sophia White was Burris' cousin.

The Williams car and its occupants went to the home of Gussie Kennedy, where whiskey drinking took place. About 8:30 or 9 o'clock, Christine Williams, Sophia White and Gary Kennedy drove over to Burris' house, but he was not at home. They later returned and found him there. The four began riding around and drinking. Sophia White

testified that Gary Kennedy got out of the car a little bit later on. At about 10 o'clock, Christine Williams stopped the car, for no apparent reason, near the corner of Maple and Byers Streets. When she did, two men, identified as Gary and James Kennedy, opened the door and dragged Burris from the car. She saw no pistol at that time. They began tearing his clothes off, and Burris was last seen, scantily clad, running over a hill towards Virginia Street. James and Gary Kennedy were following him. She testified that Gary Kennedy was dressed in brown khaki pants, with a brown vest and no shirt, at the time. She also testified that she had seen a pistol in Christine Williams' purse when she visited her home earlier in the afternoon.

Burris was next seen at the home of Pearl and Henry Massey at 90 Virginia Street. He was in his underwear and was asking directions to get home. Both Henry and Pearl Massey testified without objection. Henry testified that Burris came to his house between 10 and 10:15 p.m. He quoted Burris as having said that some boys had taken everything he had. Henry showed him which direction to go to get home and returned to watching the television. Shortly, he heard shots, and his wife exclaimed that she had seen someone shoot Burris. Pearl Massey testified that she had watched Burris walk away from the house, and that she saw a light-skinned black man, wearing khaki pants and no shirt, come out of the bushes and shoot him. He died from the wound. On cross-examination, Pearl stated that she could not say whether one of the defendants did, or did not, shoot Burris.

The testimony relative to the shooting was relevant and proper as it tended to prove that the robbery was committed while at least one of the defendants was armed with a pistol. This was, of course, an important part of the State's case. The wrongful killing was not admissible in evidence to prove either a murder or the robbery. It was admissible to prove that one of the defendants was armed at the time Burris was deprived of his property

through the use of force. His empty billfold was found in the vicinity. The following facts made evidence for the jury to consider on the "armed weapon" issue:

1. Christine Williams had a pistol:

2. James and Gary Kennedy forced Burris out of the car and were last seen chasing him over the hill, towards Virginia Street;

3. very soon thereafter, Burris showed up on Virginia Street and was shot by an assailant, whose description warranted the conclusion that he was Gary Kennedy;

4. the Massey home, where the shooting took place, and the corner of Maple and Byers Streets, where Burris was taken from the car, are close in point of distance; and

5. the two incidents were close in point of time.

Defendants argue that because Pearl Massey could not identify either of the male defendants as the one who had the weapon, her testimony should not have been considered. We cannot agree.

Pearl Massey could not truthfully say whether one of the male defendants shot Burris. Her testimony, if anything, was one of equivocation on this point. But her description of Burris' assailant was relative, circumstantial evidence on the issue of whether one of the defendants was armed with a weapon during the robbery. Her description of Burris' assailant was similar to Sophia White's identification of Gary Kennedy on the night of the robbery, and the jury was entitled to weigh this description, along with other circumstantial evidence, in making their determination of guilt. We have heretofore held that a case may be based on a chain of circumstantial evidence. *State v. Bellue,* 259 S. C. 487, 193 S. E. (2d) 121 (1972). This is such a case.

Considering all of the evidence, we cannot say the trial judge erred in refusing defendants' motion. When a motion for a directed verdict is made, the

trial judge is concerned with the existence or nonexistence of evidence, not with its weight, and although he should not refuse to grant the motion where the evidence merely raises a suspicion that the accused is guilty, it is his duty to submit the case to the jury if there is evidence, either direct or circumstantial, which reasonably tends to prove the guilt of the accused, or from which guilt may be fairly and logically deduced. *State v. Wheeler,* 259 S. C. 571, 193 S. E. (2d) 515 (1972); *State v. Jordan,* 255 S. C. 86, 177 S. E. (2d) 464 (1970).

Next, defendants assign as error the introduction of the Masseys' testimony concerning Burris' murder.

We have set forth this testimony above, to which no objection was raised by defense counsel at trial. Based on established precedent, this question cannot be raised for the first time on appeal. *State v. Bellue, supra.* But even were we to consider the question, we would find no error. The testimony of the Masseys was receivable as circumstantial evidence of "necessary parts of the proof of an entire deed." This testimony was necessary and relevant to show an inseparable element of the crime of armed robbery. I Wigmore on Evidence § 218 at 719 (1940).

Defendants' next two assignments of error concern the jury instructions.

During his charge to the jury, the trial judge defined armed robbery. He charged the jury that it could find the defendants either guilty or not guilty of the crime of armed robbery. No other possible verdict was submitted.

At the conclusion of his charge, the trial judge excused the jury and asked counsel whether they had any exceptions to the charge, or any requests for other charges, pursuant to Code § 17-513.1. Both the solicitor and defense counsel replied that they had none.

On appeal, defendants complain that the definition of armed robbery was erroneous and, also, that they were entitled as a matter of law, to have the judge charge the lesser crime of common law robbery.

The rule in this State is firmly established that failure to object to a charge, or failure to request an additional charge when the opportunity is afforded, constitutes a waiver of any right to complain on appeal of an alleged error in the charge. *State v. Gerald,* 261 S. C. 392, 200 S. E. (2d) 243 (1973). This rule is relaxed in capital cases.

Defendants argue that our State constitution requires that the trial judge "shall declare the law." S. C. Constitution V, § 17. They assert the case of *Coleman v. Lurey,* 199 S. C. 442, 20 S. E. (2d) 65 (1942), held that the duty to declare the law carries with it the implicit duty to declare the law correctly, and that it is manifest that the rule requiring a party to present his objections to a charge in the court below, or otherwise be deemed to have waived them, cannot apply if the trial judge has given erroneous instructions.

In light of the adoption, since *Coleman,* of Code § 17-513.1, requiring the trial judge to excuse the jury before eliciting objections or requests for additions, the value of *Coleman* as precedent is nullified. In *Eaddy v. Jackson Beauty Supply Co.,* 244 S. C. 256, 136 S. E. (2d) 297 (1964), we stated that the right to have the law declared may be waived by the parties and, ordinarily, silence in the face of an omission from, or error in the charge amounts to waiver. We make no distinction between errors and omissions, where counsel has been given the opportunity to bring them to the attention of the trial judge, pursuant to Code § 17-513.1. *State v. Hall,* 253 S. C. 294, 170 S. E. (2d) 379 (1969).

Defendants next assign as error the failure of the trial judge to grant a new trial when, after the jury had returned its verdict of guilty, James Kennedy addressed the court and stated that he had noticed that some of the jurors had served on his jury at a previous trial.

Neither the trial judge nor trial counsel responded to this assertion, as far as the record shows, and no motion for a new trial was made.

Since the basis of this alleged error was brought up by James Kennedy himself at trial, we will consider the question as if a motion for a new trial had been made.

Code § 38-203 provides that all objections to jurors called to prosecutions, if not made before the jury is empaneled for, or charged with, the trial of a case, shall be deemed waived, and if made thereafter shall be of no effect.

In *State v. Johnson,* 248 S. C. 153, 149 S. E. (2d) 348 (1966), we stated that the word "objections" meant such objections of which the party had knowledge, or which, by the exercise of due diligence, he could have known. We held that upon motion for a new trial based upon disqualification of a juror , it is incumbent on the movant to show, among other things, that he was not negligent in failing to make discovery of the disqualification before the verdict, and was not guilty of lack of due diligence in discovering any disqualification. James Kennedy's statement to the judge indicates that he was aware of a possible disqualification before the jury returned its verdict. Under these circumstances, he is not entitled to a new trial, and there was no abuse of discretion in failing to inquire further into the matter.

Next, defendants assert that they have been deprived of the effective assistance of counsel on appeal, due to the lack of a record of the closing arguments of counsel.

The United States Supreme Court has stated that effective assistance of counsel on appeal does not require a complete transcript of the trial. Where the state sustains the burden of showing that only a portion of the transcript will suffice for an effective appeal in the state appellate court, that portion only is required to be furnished for appellant. *Mayer v. City of Chicago,* 404 U. S. 189, 92 S. Ct. 410, 30 L. Ed. (2d) 372 (1971).

Traditionally, in South Carolina, arguments of counsel to the jury have not been recorded. The arguments were not recorded in this case; the court reporter indicated in the record that no objections were made by either side after counsel had finished addressing the jury. If counsel believes an argument to be improper, his rights are fully protected by the method set forth in *State v. Meehan,* 160 S. C. 111, 158 S. E. 151 (1931), and in *Crocker v. Weathers,* 240 S. C. 412, 126 S. E. (2d) 335 (1962). In *Crocker,* we said:

"The proper course to be pursued when counsel makes an improper argument is for opposing counsel to immediately object and have a record made of the statements or language complained of and to ask the Court for a distinct ruling thereon."

We refuse to hold that arguments must be recorded in every case and refuse to hold that these defendants have been deprived of effective assistance of counsel because of the absence of a record of the closing arguments. No contention of impropriety in the arguments is pointed out and, at most, counsel's pursuit of this matter is a fishing expedition.

Defendants' last assignment of error concerns their allegation of ineffective assistance of counsel at trial.

The effect of efforts to raise this point is to request this Court to hear the matter in our original jurisdiction. This is an appellate court for the correction of errors of law committed at the trial level. This question was not pursued at the trial level, and we decline to try it now.

For the reasons set forth above, the verdict of the court below is

AFFIRMED.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.