0539

The STATE, Respondent, v. Paul Jacob HENDERSON, Appellant.

(334 S. E. (2d) 519)

Court of Appeals

*Elizabeth C. Fullwood* of *S. C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Atty. Gen. Harold M. Coombs, Jr.,* and *Staff Attys. Susan A. Lake* and *Norman Mark Rapoport,* Columbia, and *Sol. William L. Ferguson,* York, *for respondent.*

Heard May 28, 1985.

Decided Aug. 20, 1985.

GOOLSBY, Judge:

The question presented by this appeal concerns the admissibility of a confession made by the appellant Paul Jacob Henderson after he allegedly invoked his right to counsel. A jury convicted Henderson of armed robbery. We affirm.

Shortly before 11:00 p.m. on January 14, 1984, James Carpenter, the assistant manager of A & P's only store in Rock Hill, drove to a nearby branch of the South Carolina National Bank to deposit the store's proceeds. When he pulled into the bank parking lot, which was well-lit, Carpenter noticed a white Ford Mustang Cobra II. It had blue stripes

down the center of the hood. The stripes extended onto the roof line.

While attempting to place a bank bag containing cash, checks, and food stamps into the night-deposit drawer, Carpenter was grabbed from behind by a man wearing a hooded cap. As Carpenter struggled with the man, Scott Caldwell, a store clerk who had accompanied Carpenter, got out of the car to help Carpenter. The man produced a pistol and pointed it at Caldwell ordering him to get back into the automobile. Caldwell got back into the car. The man then placed the pistol near Carpenter's left temple. Fearing the man would use the pistol, Carpenter surrendered the deposit bag. The man instructed Carpenter to get back into the automobile, turn off the motor, and throw out the keys. As Carpenter did so, the man backed away, turned around, and ran in the direction of the Mustang.

Afterward, Carpenter heard a vehicle start up and leave from where moments before he had seen the Mustang. Carpenter started his car and drove away from the bank. As he left, he saw that the Mustang had disappeared.

Carpenter returned to the A & P and promptly summoned the police. He reported the incident and gave the investigating officer a description of the robber and of the robber's automobile.

Detective Bobby Dean Henderson of the City of Rock Hill Police Department familiarized himself the next day with the facts surrounding the armed robbery and began working on the case. Around 2:00 p.m. on January 15th he and another officer, identified only as Special Investigator Duke, went to the parking lot of the Howard Johnson's Motel. A car matching the description given the police by Carpenter had been seen parked at the motel and traced to the occupant of Room 111. The officers knocked on the door to Room 111. Paul Jacob Henderson answered the officers' knock. He fit the description Carpenter and another person had given the police.

After talking with the defendant and his wife, the officers went to the motel lobby. Within a short time, the defendant, his wife, and two children left the motel room and came into the lobby. Detective Henderson asked to talk to them further. He noticed the wife's purse was bulging. At Detective

Henderson's request, the wife allowed him to look inside her purse. He found it contained approximately $5,300 wrapped in a clear plastic bag.

The officers arrested the defendant upon the discovery of the money and charged him with armed robbery.

Through their investigation, the officers learned the defendant lived with his mother, father, and younger brother, Joe Henderson, a former employee of the A & P. A search of the defendant's backyard led to the unearthing of a plastic trash bag. The bag contained between $3,200 and $3,800 in cash and $887 in food stamps. The latter bore A & P's stamp.

On January 16th, the defendant gave the police a signed confession.

## I.

The defendant maintains the trial court improperly allowed his confession in evidence. He claims to have invoked his right to counsel during a custodial interrogation on January 15th and to have been questioned thereafter by the police concerning the armed robbery without counsel having been afforded him and without his having initiated further conversation with the police.

The United States Supreme Court in *Edwards v. Arizona*, 451 U. S. 477, 101 S. Ct. 1880, 68 L. Ed. (2d) 378 (1981), held that once the right to counsel is asserted, questioning of a suspect must cease until counsel is either obtained for the suspect or retained by him. *See United States v. Cherry*, 733 F. (2d) 1124 (5th Cir. 1984). Only in instances in which the suspect initiates subsequent conversations or communication with the investigating authority is a waiver of the right to counsel possible. *Oregon v. Bradshaw*, 462 U. S. 1039, 103 S. Ct. 2830, 77 L. Ed. (2d) 405 (1983). The Supreme Court in *Edwards* "established a per se rule that if a conversation is initiated by the police, a valid waiver is impossible." 2 W. E. Ringel, *Searches & Seizures, Arrest and Confessions* § 28.5 at 28-25 (2d ed. 1985); *see Solem v. Stumes*, 465 U. S. 638, 104 S. Ct. 1338, 79 L. Ed. (2d) 579 (1984); *United States v. Cherry, supra.*

During an *in camera* hearing [*see Jackson v. Denno*, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. (2d) 908, 1 A. L. R. (3d) 1205 (1964)], the defendant testified that following his arrest on

January 15th at the Howard Johnson's Duke took him to the law enforcement center. Duke left him with two other detectives who began to interrogate him. The defendant told them he wanted to talk with a lawyer and would make no statement until then. The next morning Detective Henderson came to his cell and asked him whether he was ready to make a statement. The defendant said he felt he should talk to a lawyer first. Detective Henderson took him to a room and again asked him if he was "ready to talk and make a statement." He indicated to Detective Henderson he was prepared to give a statement but thought he should "talk to a lawyer first." Before making any statement, however, Detective William Burris came into the room and Detective Henderson left. The defendant informed Detective Burris, "I think I'm making a hell of a mistake here. I think I need to talk to a lawyer first. . . ." Nonetheless, he thereafter confessed and signed a written statement. He also signed a waiver of rights form.

Both Detective Burris and Detective Henderson testified at the *in camera* hearing that the defendant made no request on January 16th to see a lawyer. Detective Henderson acknowledged, however, that on the morning of January 16th he went to the defendant's cell to ask "him if he wanted to talk to me" and the defendant told him, "[Y]es, I'm ready to talk to you." Detective Henderson admitted he was aware that Duke had talked with the defendant on January 15th but knew of no one else who might "have talked with him" at the law center on that day. Neither Duke nor any other officer took the witness stand to deny that the defendant asked for a lawyer on January 15th.

The trial judge made the following findings:

> I find beyond a reasonable doubt that the defendant was afforded and given his constitutional rights under the *Miranda* warnings. I find that he understood them and knew them. I find that beyond a reasonable doubt. I find under the totality of the circumstances that the statement that was given was given freely and voluntarily. I find that beyond a reasonable doubt in the totality of the circumstances.

As is readily apparent, the trial judge's findings did not include whether the defendant invoked his right to counsel

and whether, if he did so, he knowingly and intelligently waived this right. *See Smith v. Illinois,* ___ U. S. ___, 105 S. Ct. 490, 83 L. Ed. (2d) 488 (1984); *State v. Linnen,* 278 S. C. 175, 293 S. E. (2d) 851 (1982). Rather, the trial judge limited his findings solely to whether the defendant was given and understood the warnings required by *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. (2d) 694 (1966), and to whether the defendant's statement was voluntarily made.

The State bears the burden of proving by a preponderance of the evidence that a statement allegedly given by an accused was voluntary [*State v. Scott,* 269 S. C. 438, 237 S. E. (2d) 886 (1977); *Mobley v. State,* 164 Ga. App. 154, 296 S. E. (2d) 617 (1982)] and that the accused voluntarily, knowingly, and intelligently waived his rights to silence and to have counsel present during interrogation. *United States v. Bentley,* 726 F. (2d) 1124 (6th Cir. 1984); *United States v. Montgomery,* 714 F. (2d) 201 (1st Cir. 1983); *see State v. Neeley,* 271 S. C. 33, 244 S. E. (2d) 522 (1978); *State v. Pendergrass,* 270 S. C. 1, 239 S. E. (2d) 750 (1977).

Here, the uncontroverted evidence is that the defendant requested an attorney on January 15th during his first interrogation. Under *Edwards,* the defendant, because he had asked for a lawyer, was not subject thereafter "to further interrogation by the authorities until counsel [had] been made available to him, unless [the defendant] himself initiate[d] further communication, exchanges, or conversations with the police." *Edwards v. Arizona,* 451 U. S. at 484-85, 101 S. Ct. at 1884-85, 68 L. Ed. (2d) at 386. The evidence is clear that the second interrogation with Detective Henderson "was police-initiated and conducted without compliance with [the defendant's] initial request for counsel." *Mobley v. State,* 164 Ga. App. at 158, 296 S. E. (2d) at 621. The statement given by the defendant during the second interrogation, therefore, was obtained in violation of the constitutional principles enunciated in *Edwards* and was not admissible.

## II.

Having determined that *Edwards* barred the admissibility of the defendant's confession, we now consider whether the error was harmless beyond a reasonable doubt. *Chap-*

*man v. State of California,* 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. (2d) 705, 24 A. L. R. (3d) 1065 (1967); *see State v. Patterson,* __ S. C. __, 327 S. E. (2d) 650 (1984), *cert. denied,* __ U. S. __, 105 S. Ct. 2056, 85 L. Ed. (2d) 329 (1985). If it was not, reversal is required.

A voluntary confession obtained in violation of an accused's right to counsel is subject to the harmless error rule. *See, e.g., United States v. Bentley, supra; Simmons v. Commonwealth,* 225 Va. 111, 300 S. E. (2d) 918 (1983); *Smith v. Estelle,* 527 F. (2d) 430 (5th Cir. 1976). Before determining whether the error in admitting the defendant's unlawful confession in evidence was harmless beyond a reasonable doubt, we first must consider the defendant's decision to testify and the content of his testimony. *Lewis v. United States,* 483 A. (2d) 1125 (D. C. App. 1984); *see Harrison v. United States,* 392 U. S. 219, 88 S. Ct. 2008, 20 L. Ed. (2d) 1047 (1968).

In our view, the defendant's decision to take the witness stand was dictated by the State's other evidence, outlined above. His conviction of armed robbery, which carries a much greater sentence than that of common law robbery [*see* S. C. Code of Laws §§ 16-11-330 and 17-25-20 (1976); *State v. Williams,* 266 S. C. 325, 223 S. E. (2d) 38 (1976)] was virtually assured unless he produced some evidence either that he was elsewhere or that he was not in fact armed at the time of the robbery.

On direct examination, the defendant readily admitted he robbed Carpenter. The remainder of his testimony appeared directed toward convincing the jury he was guilty of common law robbery only. His testimony emphasized the absence of a usable and a visible weapon at the time he confronted the victim. We are satisfied, then, that the defendant's decision to testify was not induced by the introduction of his statement to the police. *See Lewis v. United States, supra.*

Our review of the content of his testimony reveals no damaging testimonial admission induced by the improper introduction and use of his unlawfully-obtained confession. While his testimony at trial does contain a damaging admission, that he committed the robbery, we are convinced that the defendant would have made this

admission irrespective of the introduction in evidence of his illegally-obtained statement. Again, the defendant's in-court testimony emphasized the condition and concealment of his pistol at the time he robbed Carpenter.

We are satisfied, therefore, that neither the defendant's decision to testify nor the content of his testimony was dictated by the erroneous admission in evidence of his statement secured in violation of *Edwards*. Rather, they were prompted by the State's other evidence relating to the defendant's conduct.

We turn now to the question of whether the defendant's pre-trial statement was harmless. In making this determination, we consider the defendant's trial testimony and the State's evidence.

At trial, the defendant made virtually the same damaging admissions he made to Detective Henderson in his confession. He admitted he robbed Carpenter and he admitted he was armed with a firearm, albeit a disabled and concealed one, when he confronted the victim. As he stated in his confession, the defendant testified he kept the pistol in his pocket during the robbery. Consequently, the defendant's statement to the police was merely cumulative.

We therefore conclude there was no reasonable possibility that this evidence contributed to the defendant's conviction of armed robbery. *Lewis v. United States, supra; see State v. Sullivan*, 277 S. C. 35, 282 S. E. (2d) 838 (1981): In reaching this conclusion, we note that in South Carolina a gun used in a robbery is a deadly weapon regardless of its alleged inoperability. *State v. Bailey*, 273 S. C. 467, 257 S. E. (2d) 231, 8 A. L. R. 4th 145 (1979), *cert. denied*, 444 U. S. 1083, 100 S. Ct. 1039, 62 L. Ed. (2d) 768 (1980). We further note that the offense of armed robbery occurs in this state when a person commits a robbery "while armed with a pistol." S. C. Code of Laws §16-11-330 (1976); *see State v. Lawrence*, 266 S. C. 423, 223 S. E. (2d) 856 (1976); *Commonwealth v. Goldman*, 5 Mass. App. 635, 367 N. E. (2d) 1181 (1977).

Affirmed.

Sanders, C. J., and Gardner, J., concur.