## 1592

The STATE, Respondent v. Victoria Bennett NEWELL, Appellant.

(401 S.E. (2d) 420)

Court of Appeals

*William G. Rhoden,* Gaffney, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *William Edgar Salter, III,* Columbia, and *Sol. Holman C. Gossett, Jr.,* Spartanburg, *for respondent.*

Heard Dec. 3, 1990.

Decided Jan. 7, 1991.

Goolsby, Judge:

Victoria Bennett Newell appeals her conviction by a jury for driving under the influence (DUI). The questions on appeal relate to the trial judge's failure to disqualify the venire from which her jury panel was chosen, his failure to suppress statements made by Newell following her arrest, and his allowance of the breathalyzer checklist in evidence.

On November 24, 1988, at around 7:00 a.m., Trooper D.R. Porter arrived at the scene of a traffic accident that had occurred in Cherokee County on Interstate-85 in the northbound lane. One of the automobiles involved belonged to Newell, its only occupant. Trooper Porter, the first officer on the scene, found Newell seated in the driver's seat behind the steering wheel of her car, her clothes in disarray and the odor of alcohol about her person. Newell, who did not appear injured, identified herself to Trooper Porter as the car's driver. When Trooper Porter asked Newell to step from the car, "she

was staggering." Trooper Porter, who concluded Newell was under the influence, placed her under arrest at about 7:35 a.m., charging her with DUI. He then assisted her into the patrol car of a second highway patrolman.

Like Trooper Porter, the second officer, Sergeant John L. Canty, also smelled the odor of alcohol about Newell. After Newell got out of her car, Sergeant Canty saw her "wobbling" and walking "weavey-like." He had "no doubt . . . in [his] mind that she was under the influence of an alcoholic beverage."

Sergeant Canty drove Newell to the Cherokee County jail in Gaffney. There, Sergeant G.L. Yarborough of the Highway Patrol administered a breathalyzer test to Newell at around 8:57 a.m. The test placed Newell's blood alcohol level at 0.17 per cent. Newell seemed to Sergeant Yarborough to be overly talkative. He detected about her a "very strong odor of some alcoholic beverage coming from her breath and her person" and he observed Newell "was very unsteady on her feet." He believed Newell to be "very much under the influence."

The Cherokee County Grand Jury later indicted Newell for second offense DUI.

## I.

Newell maintains the trial judge committed prejudicial error in denying her pretrial motion to quash the venire from which the jury panel that heard her case was selected. She alleges the venire was "tainted" because it was present in the courtroom when, just prior to the selection of the jury panel in her case, a defendant, who had been indicted on three counts of felony DUI after being involved in a vehicular accident and registering a breathalyzer reading lower than the reading recorded by Newell, entered a *nolo contendere* plea.

Newell's contention regarding the venire has no merit whatever. There is a complete absence of any evidence that anyone on the venire was so affected by the plea proceedings in the felony DUI case that he or she in Newell's case " '[could not] render a just verdict based on the evidence adduced at trial, without regard to preconceived ideas.' " *State v. Jones*, 298 S.C. 118, 121, 378 S.E. (2d) 594, 596 (1989) *cert. denied*, ___ U.S. ___, 110 S. Ct. 1534, 108 L. Ed. (2d) 773 (1990), quoting *State v. Thomas*, 268 S.C. 343, 348, 234 S.E. (2d) 16, 18 (1977).

In an attempt to determine the competence of all members of the venire to serve on the jury panel in Newell's case, the trial judge examined the venire on *voir dire*. He asked them, among other things, whether any one of them opposed alcohol consumption, held membership in any organization opposed to driving and drinking, had formed an opinion concerning Newell's guilt or innocence, and knew of any reason why he or she could not give both the State and Newell a fair and impartial trial. Newell challenged none of the jurors for cause, including the two who responded to the trial judge's questions. Also, when the trial judge asked Newell's counsel whether he had "[a]nything further," counsel replied, "[n]othing, your Honor."

The fact that the venire was present when the court accepted a *nolo contendere* plea in an unrelated, though similar, DUI case afforded no basis, without more, for disqualifying the venire members from serving on the jury panel in Newell's DUI case. *See St. John v. Commercial Union Insurance Co.*, 719 F. (2d) 374 (11th Cir. 1983) (jurors are not disqualified from having served on a prior similar case involving different parties); *United States v. Franklin*, 700 F. (2d) 1241 (10th Cir. 1983) (a person who sat on a similar criminal case before being selected for the case on which he is challenged cannot be dismissed unless the person is shown to be biased); *Lang v. Murch*, 438 A. (2d) 914 (Me. 1981) (prior jury service on a similar but unrelated case does not automatically disqualify a prospective juror from service); *State v. Charlot*, 157 W.Va. 994, 206 S.E. (2d) 908 (1974) (a defendant in a drug sale prosecution is not entitled to have the entire panel of jurors stricken even though thirteen of twenty had served in other cases involving similar subject matter and evidence); *State v. Martin*, 21 N.C. App. 645, 205 S.E. (2d) 583 (1974) (the fact that a juror served in a case that is similar to the case in which he is being asked to serve does not disqualify the juror).

## II.

Newell next contends the trial judge committed reversible error in receiving in evidence the statements Newell made to Sergeant Canty, the officer who transported her to the jail.

Sergeant Canty testified he asked Newell, while enroute to the jail and again at the jail, about where she had been before the accident and how the accident happened. She told

Sergeant Canty she was coming from Greer on her way home to Greenville when her car was struck from the rear as she attempted to change lanes, she had been at a friend's house in Greer the night before the accident and had had something to drink there but she did not know how much, and she had consumed her last drink around 10:00 p.m.

## A.

Newell initially moved to suppress the statements made by her to Sergeant Canty on the ground that the State failed to make a disclosure of the statements pursuant to her request under Rule 5(a)(1)(A) of the South Carolina Rules of Criminal Procedure.[1] In making his motion, counsel for Newell declared "this is my first inkling that there ha[ve] been statements made by [Newell] to Officer Canty."

Newell's counsel, however, thereafter acknowledged the solicitor maintained an "open file" policy and admitted he had "probably" looked at the solicitor's file. The file, which the prosecutor insisted he had made available to Newell's counsel, contained highlighted notes made by Sergeant Canty that reflected much of the officer's testimony concerning Newell's statements to him.

The trial judge then recessed the trial and gave Newell's counsel an opportunity to talk with Sergeant Canty. An *in camera* hearing in which Sergeant Canty testified followed. At its conclusion, the trial judge denied Newell's motion to suppress. He cited her counsel's opportunity to talk with the officer "to find out what he is going to testify to" and the availability to counsel before trial of the solicitor's file containing Sergeant Canty's notes.

We find no fault with the trial judge's ruling regarding Newell's motion to suppress made pursuant to Rule 5(d)(1). In making available to Newell's attorney its file containing Sergeant Canty's notes, the prosecution substantially, if not

---

[1] Rule 5(a)(1)(A) SCRCrimP provides in pertinent part:

Upon request by a defendant, the prosecution shall permit the defendant to inspect and copy or photograph: . . . the substance of any oral statement which the prosecution intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a prosecution agent.

totally, satisfied Rule 5(a)(1)(A)'s requirement that it "permit the defendant to inspect and copy . . . the substance of any oral statement which the prosecution intends to offer in evidence at the trial made by the defendant. . . ."

Even assuming the prosecution failed to respond to Newell's request for discovery before trial, the trial judge did not abuse his discretion in not suppressing the statement for failure to respond. *See* 2 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL (2d) § 261 at 126 (1982) (adverse orders regarding discovery may be reviewed on appeal but they must be affirmed unless the trial court abused its discretion). Rule 5(d)(2),[2] as does its federal counterpart, FED.R. CRIM.P. 16(d)(2), gives the court a broad discretion in deciding what should be done where material that should have been produced in response to an earlier request does not become known until during or just before the trial. *Id.* § 260 at 120. The sanction the trial judge chose here, recessing the trial and affording Newell's counsel an opportunity to interview the officer to whom Newell allegedly made the incriminating oral statements, was an appropriate sanction under the circumstances. *Cf. State v. Patterson*, 290 S.C. 523, 351 S.E. (2d) 853 (1986), *cert. dismissed, sub nom. Patterson v. South Carolina*, 482 U.S. 902, 107 S. Ct. 2490, 96 L. Ed. (2d) 382 (1987) (the State's failure to produce tape of interview with a prosecution witness until the morning of jury selection did not warrant a dismissal or a mistrial where the court allowed defense counsel to listen to the tape before the witness took the stand for direct examination and the court delayed cross-examination until the next day).

## B.

Newell also moved to suppress the statements, claiming the officers never gave her the *Miranda* warnings. The trial

---

[2] Rule 5(d)(2) SCRCrimP provides in part:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. . . .

judge, however, denied the motion based on his view that the *Miranda* warnings are not required in traffic cases.

■ A person subjected to custodial interrogation must be afforded the benefit of the *Miranda* safeguards, irrespective of the nature or severity of the offense for which the person has been arrested or of which the person is suspected of having committed. *Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138, 82 L. Ed. (2d) 317 (1984). Here, Newell was in custody at the time Sergeant Canty inquired about where she had been before the accident and about how the accident occurred. The trial judge, therefore, should have suppressed the challenged testimony.

■ Although the trial judge erred in not suppressing Sergeant Canty's testimony regarding Newell's in-custody statements because of his failure to advise Newell of her rights under *Miranda*, we deem the admission of this testimony harmless beyond a reasonable doubt. *People v. Cagle*, 158 A.D. (2d) 931, 551 N.Y.S. (2d) 95 (1990). The record contains overwhelming evidence of Newell's guilt independent of her statements to Sargeant Canty. Indeed, no verdict other than guilty could have reasonably been reached when one considers Newell's admission that she was driving an automobile, the evidence of there being a vehicular accident involving Newell's car, the evidence concerning the odor of alcohol about Newell's person, the evidence concerning Newell's manner of dress and way of walking and standing at the time of her arrest, and especially the evidence concerning the results of the breathalyzer test given her later at the county jail and the opinions offered by three highway patrolman that Newell was under the influence of alcohol. *See State v. Andersen*, 213 Neb. 695, 703, 331 N.W. (2d) 507, 512 (1983) ("When one considers the evidence concerning Andersen's manner of driving, his physical appearance and behavior, and the result of the Intoximeter test, no other result could have reasonably been reached but that of guilty."); *see also, Cagle*, 158 A.D. (2d) 931, 551 N.Y.S. (2d) 95 (the admission of the defendant's statements obtained in violation of *Miranda* held harmless beyond a reasonable doubt because the evidence of the defendant's guilt was overwhelming and the testimony of both the defendant and his witness was essentially the same as the defendant's statement); *People v. Scharle*, 14 Ill. App. (3d) 511,

302 N.E. (2d) 663 (1973) (the admission of the defendant's statements given without the benefit of the *Miranda* warnings held harmless beyond a reasonable doubt where the conviction for driving a vehicle while under the influence of intoxicating liquor rested upon other evidence).

Although Newell includes no exception that raises the issue, we do not overlook her argument that the improperly admitted statements, including the statement that she was coming from Greer and heading home to Greenville, dictated her decision to testify. In our view, the State's other evidence, outlined above, induced Newell's decision to take the witness stand. Her conviction for driving under the influence was virtually assured unless she produced some evidence that she was not influenced by the effects of alcohol when driving her automobile on the morning in question. *Cf. State v. Henderson,* 286 S.C. 465, 334 S.E. (2d) 519 (Ct. App. 1985) (the decision by a defendant charged with armed robbery to testify held dictated by evidence other than his improperly admitted confession).

### III.

Finally, Newell contends the trial judge committed reversible error in allowing the breathalyzer checklist in evidence.

Without deciding, as the State would have us do, that the checklist was admissible as a business record pursuant to Section 19-5-510 of the S.C. Code Ann. (1976), we fail to see how its admission in evidence prejudiced Newell. The breathalyzer operator, Sergeant Yarborough, testified as to the steps he took regarding the administration of the test to Newell from the time he arrived at the jail and began observing Newell until the moment he finished administering the test to her. Because the checklist was merely cumulative to the in-court testimony given by its author and therefore harmless, its admission in evidence does not require the reversal of Newell's conviction. *See Clark v. Ross,* 284 S.C. 543, 328 S.E. (2d) 91 (Ct. App. 1985) (a reversal is not warranted where evidence erroneously admitted is merely cumulative); *cf. Varnadore v. Nationwide Mutual Insurance Co.,* 289 S.C. 155, 345 S.E. (2d) 711 (1986) (an alleged error in excluding a prepared report is harmless error where the report's author testified concerning its contents).

Affirmed.

SANDERS, C.J., and GARDNER, J., concur.

