## 1911

The STATE, Respondent v. George R. WILKINS, Appellant.

(425 S.E. (2d) 68)

Court of Appeals

*Andrew J. Savage, III* and *David L. Savage,* Charleston, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *William Edgar Salter, III,* Columbia, and *Sol. Charles Molony Condon,* North Charleston, *for respondent.*

Heard Nov. 2, 1992.

Decided Dec. 7, 1992.

GOOLSBY, Judge:

George R. Wilkins was convicted following a jury trial of trafficking in cocaine ("trafficking"), possession of cocaine with intent to distribute ("PWID"), and conspiracy to violate South Carolina narcotics laws ("conspiracy"). The questions on appeal relate to the State's nondisclosure of certain material asserted to be exculpatory, the failure of the trial judge to disqualify the venire, a comment made by the solicitor during his opening statement, the defense of double jeopardy, and the trial judge's refusal to accept a guilty plea to one count of a multi-count indictment. We affirm.

On March 16, 1989, City of Charleston police officers gave $900 in currency, which they had earlier photocopied, to an in-

formant for use in a drug buy. The informant had told the police of an acquaintance's plan to buy drugs in Florida. He said two men in a silver Mercedes Benz would drive to Florida, pick up the drugs, and return on a certain date.

The next day at the time specified by the informant, a silver Mercedes Benz carrying Wilkins and his codefendant, Lawrence Toback, entered South Carolina on Interstate 95. The police stopped the car, which was owned by Wilkins' brother, and searched it. They found a package of cocaine in the glove compartment and a brown canvas bag containing a package of cocaine, certain personal items, and a letter addressed to Wilkins. Wilkins, the officers discovered, had the $900 that they had given the day before to the informant.

## I.

On August 25, 1989, six months after Wilkins' arrest, his attorney directed a request to the State for information subject to disclosure pursuant to Rule 5(a), SCRCrimP. The request also sought *Brady* material. It did not specifically ask for any material concerning Toback.

On August 27, 1989, Toback fled the jurisdiction after posting a cash bond. Toback had not been apprehended by the time trial began.

On November 30, 1989, having received no discovery material, Wilkins' attorney filed a motion to compel.

The State waited until February 1, 1990, some six weeks before trial, to give Wilkins a North Carolina police report on Toback's drug activities. The report outlined a five-year investigation into Toback's illegal drug activities following his arrest in Florida for marijuana smuggling. One entry concerned an inquiry made in late January 1989 by the Mt. Pleasant Police Department in which it indicated Toback had been arrested in Mt. Pleasant for possession of cocaine and possession of a weapon by a felon.

## A.

Wilkins argues the trial court erred in refusing to dismiss the charges against him on the ground that the State failed to comply with Rule 5's disclosure requirements. He claims the State's delay in providing the police report interfered with any defense he might have had to the

charges against him based on "mere presence without knowledge." Had he known the report existed, he suggests, he might have interviewed Toback to corroborate his defense.

Wilkins' Rule 5 argument fails because he can show no prejudice caused by the State's delay in complying with this discovery request.

Under Rule 5(a)(3), SCRCrimP, the State had 30 days to respond to Wilkins' request for disclosure. By the time the State's response became due, Toback had fled the jurisdiction. Wilkins, then, was in no different position on the date of disclosure than he would have been had disclosure been timely made.

### B.

Wilkins also argues the trial court erred in not dismissing the charges against him because the State failed to satisfy timely the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.ED. (2d) 215 (1963), regarding disclosure of evidence favorable to an accused.

Wilkins has not convinced us that the asserted untimely disclosure of the report warrants reversal in this case under *Brady.*

At best, Wilkins' request, so far as it related to information concerning Toback, was a general request for exculpatory matter. We mentioned that nowhere did Wilkins specifically request information concerning his codefendant.

When there has been no request or only a general request for information, no constitutional violation for a prosecutor's failure to disclose exculpatory information arises unless the failure "is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed. (2d) 342, 352 (1976); *accord State v. Gathers,* 295 S.C. 476, 369 S.E (2d) 140 (1988), *aff'd* 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed. (2d) 876 (1989). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Agurs,* 427 U.S. at 109-10, 96 S.Ct. at 2400, 49 L.Ed. (2d) at 353. The constitutional standard of materiality is met only "if the omitted evidence creates a reasonable doubt that did not otherwise exist." *Id.* at 112, 96 S.Ct. at

2402, 49 L.Ed. (2d) at 355. "This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* at 112-13, 96 S.Ct. at 2402, 49 L.Ed. (2d) at 355.

We entertain no reasonable doubt about Wilkins' guilt. The State presented at trial convincing evidence, outlined above, that Wilkins was involved beyond his asserted "mere presence without knowledge" at the scene of a crime.

## II.

As the trail judge began the jury selection process, Wilkins' attorney, following an inquiry by the clerk of court, indicated Wilkins wanted a "formal arraignment." The clerk of court then arraigned Wilkins, reading the three-count indictment that alleged trafficking in count one, PWID in count two, and conspiracy in count three. When asked whether he was guilty or not guilty, Wilkins replied, "Guilty to count two." After the state announced it was ready to proceed on the other two counts and the trial judge asked how Wilkins was pleading to those counts, Wilkins' attorney replied Wilkins was not guilty "as to counts one and three."

All this took place in the presence of the venire.

Following Wilkins' arraignment on the indictment, the trial judge began the jury selection process once again. He addressed a number of questions to the venire to determine the competency of its members to serve, including some questions submitted by Wilkins' attorney.

The jury was then chosen.

Afterward, but before the jury could be sworn, Wilkins' attorney moved to disqualify "This panel . . . because the State chose to arraign my client in front of this panel and he has prejudiced himself in front of this panel by entering a plea of guilty to [PWID]." He also argued "a plea of guilty to [PWID] disallows the State from proceeding on [trafficking]." The trial judge denied Wilkins' motion to disqualify "the panel." He neglected to rule, at least expressly, on the issue of whether the State could proceed on the trafficking count.

The jury was then sworn.

Before the trial could start, however, the State indicated it would agree to a guilty plea from Wilkins to PWID.

Immediately afterward and apparently outside the jury's presence, Wilkins tendered a plea of guilty to PWID. He signed a form prepared by the clerk of court in which he stated, "I appear in person and plead guilty to [PWID]."

The trial judge questioned Wilkins' counsel concerning Wilkins' understanding of the charges contained in the indictment, of the possible sentence for PWID, and of the State's position regarding the trafficking count. The trial judge also questioned Wilkins concerning the voluntariness of his plea and his knowledge of the right to a trial by jury, of his right to cross-examine the State's witnesses and to call witnesses of his own, of the burden of proof required to convict him, and of his right to testify. He further questioned Wilkins regarding whether he was satisfied with his attorney's services, whether his attorney had failed to do anything Wilkins wanted him to do whether Wilkins was under the influence of alcohol or drugs, whether he had any complaints against the solicitor's office or the police, and whether he was in fact guilty of PWID.

When, however, Wilkins' attorney wanted to have Wilkins' guilty plea "taken subject to . . . pre-trial motions and the court's rulings on those motions," the State objected.

The trial judge thereupon advised Wilkins' attorney that he would "allow him to withdraw his plea. . . ." Following a conference between Wilkins and his attorney, the latter asked the trial judge to permit Wilkins "to withdraw his plea of guilty for purposes of a legal nature only, not of a factual nature." The trial judge responded, "I'll allow him to withdraw it."

Before the jury could be brought back, the solicitor asked whether, during his opening statement, he could remind the jury "of what Mr. Wilkins did when he was arraigned in front of them." When the trial judge asked Wilkins' attorney what his position was "on the ability of the solicitor to talk about what has gone on before the jury already," he replied, "I can't tell the solicitor how to try his case, Your Honor. Whatever he does he'll have to live with." The trial judge then ruled, "All right, sir. Solicitor . . . with no objection, you can make whatever remarks you want on whatever went on in the courtroom in front of the jury. . . . That means you can tell the jury that he said when he was arraigned that he was guilty."

The trial judge had the jury brought back to the courtroom and the trial began.

During his opening statement, the solicitor commented:

> [W]hen Mr. Wilkins was arraigned this morning he said: Listen, I possessed the cocaine with the intent to distribute. Now, he is not pleading guilty to that charge now, but you heard that. You weigh that with everything else because what that says to me is this: The elements that I've got to prove to prove him guilty of trafficking in cocaine are: possession, cocaine in excess of ten grams.
>
> When he did that, what he told me was: (a) I possessed . . . something. (b) That it was cocaine. (c) With the intention of [sic] distribute it. I don't have to show the intent to distribute to prove him guilty of the trafficking. All I've got to show is that the cocaine was more than ten grams.

Wilkins made no objection.

Later and outside the presence of the jury, Wilkins' attorney moved "to reapply to the court for permission to change the plea—or to continue his plea, which was done at the arraignment, of guilty as to count two unconditionally as to any pretrial motions that were made." The State, however, would no longer agree to a guilty plea tendered by Wilkins to just count two of the indictment.

Wilkins' attorney next moved for a mistrial based on the comments made by the solicitor during opening argument about Wilkins' plea of guilty to PWID. The trial judge denied the motion stating "You and your client are the ones that brought this to the attention of the jury . . . and now today you are moving for a mistrial on something you elected to do."

The trial resumed.

At the end of the State's case, Wilkins' attorney "renew[ed] [the] motion for the court to accept the guilty plea pursuant to the arraignment . . . as to count two of the indictment." The trial judge denied the motion.

In his opening statement made at the beginning of Wilkins' case, his attorney stated, "Mr. Wilkins is guilty. He has said in front of you on Monday and in front of this court that he is guilty, but he is guilty only of the charges that he is responsible for. . . . He is guilty of possession of cocaine."

## A.

Wilkins asserts the trial judge erred in refusing to disqualify the venire on the ground that he was arraigned and was allowed to plead guilty to PWID in the venire's presence. We reject this argument. Wilkins either waived his right to complain or was not prejudiced by what occurred.

Wilkins waived any error committed by the trial judge in allowing the clerk of court to arraign him in front of the venire when Wilkins made no objection to the venire's presence nor asked that the venire be excused during the arraignment proceedings. *See* 50 C.J.S. *Juries* § 250, at 1008-09 (1947) ("[A party] may waive an objection the whole panel which would furnish a ground for a challenge to the array . . . by . . . acquiescence in . . . the action . . . of the court, or refusal to take advantage of a means . . . effectually correcting the . . . irregularity.").

Moreover, the record contains no evidence that any member of the venire was so affected by Wilkins' arraignment that he or she, particularly as concerns counts one and three of the indictment, " '[could not] render a just verdict based on the evidence adduced at trial, without regard to preconceived ideas.' " *State v. Jones*, 298 S.C. 118, 121, 378 S.E. (2d) 594, 596 (1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1534, 108 L.Ed. (2d) 773 (1990( (quoting *State v. Thomas*, 268 S.C. 343, 348, 234 S.E. (2d) 16, 18 (1977)).

As we noted above, the trial judge attempted to determine the competence of all members of the venire to serve on the jury in this case. Among the questions asked them were these questions which, as we read the record, were requested by Wilkins' attorney: whether "any member of the jury panel read in the paper or [had] seen on TV or heard on the radio or learned from some other source any of the facts or alleged facts contained in these indictments [sic]"; whether "any member of the jury panel [was] so affected by a [narcotics] charge against the defendants . . . that you feel that you would be affected in any way by the mere fact that they are charged with a narcotics violation"; and whether "any member[ ] of the jury panel [was] so affected by the use of narcotics that you would be affected in any way for [or] against the defendants

or the State." No member of the venire responded to these questions. Only one member responded when the trial judge inquired whether "any member of the jury panel [knew] of any reasons whey they [sic] could not give both the State of South Carolina and the defendants . . . a fair and impartial trial" and this member, after further examination, was held qualified. And when the trail judge asked Wilkins' attorney whether he had "[a]nything further," the attorney replied, "No, sir." *See DeLee v. Knight*, 266 S.C. 103, 221 S.E. (2d) 844 (1975), *cert. denied*, 426 U.S. 939, 96 S.Ct. 2658, 49 L.Ed. (2d) 392 (1976) (the refusal to excuse four jurors who had heard of the case and some of the details but who had not formed a concrete opinion about guilt or innocence was not an abuse of discretion); *cf. State v. Newell*, 303 S.C. 471, 401 S.E. (2d) 420 (Ct. App. 1991) (members of the venire were held not disqualified from serving on the panel where, without more, they had heard the court accept a *nolo contendere* plea in an unrelated, though similar, case).

We fail to see how Wilkins was prejudiced, particularly as to the PWID charge. Wilkins' attorney in his opening statement to the jury emphasized Wilkins' guilt regarding count two of the indictment.

### B.

We need not address the issue of whether the trial judge erred in failing to grant Wilkins a mistrial on the ground that the solicitor improperly commented during his opening statement on Wilkins' admission given at his arraignment that he was guilty of count two of the indictment.

The solicitor advised the court and Wilkins, outside the presence of the jury, of his intention to remind the jury of Wilkins' response to the clerk of court's inquiry during his arraignment concerning how Wilkins pled to the indictment. Wilkins made no objection at that time. More importantly, he made no contemporaneous objection during the solicitor's opening statement when the solicitor referred to Wilkins' response. Wilkins thereby lost his right to complain later on. *See Bunch v. Charleston & W.C. Ry. Co.*, 91 S.C. 139, 74 S.E. 363 (1912) (because the failure to object is a waiver, an improper argument of counsel that is not objected to at the time cannot

be complained of later); *see also State v. Lynn*, 277 S.C. 222, 284 S.E. (2d) 786 (1981) (a failure to make the required contemporaneous objection may not be "bootstrapped" by a subsequent motion for a mistrial).

## C.

Wilkins argues the trial judge erred because of double jeopardy considerations in allowing the State to proceed on the trafficking and conspiracy counts after Wilkins tendered his plea of guilty to PWID. We disagree, if for no other reason than that Wilkins was never in jeopardy because the trial judge never accepted his tender of a guilty plea to PWID. *State v. Neas*, 278 N.C. 506, 180 S.E. (2d) 12 (1971); *see United States v. Hecht*, 638 F. (2d) 651 (3d Cir. 1981); *Peterson v. Commonwealth*, 5 Va. App. 389, 363 S.E. (2d) 440 (1987) (jeopardy attaches where there is a guilty plea when the court accepts the defendant's plea).

Wilkins, moreover, attempted to condition any acceptance of his tendered guilty plea to PWID on his "pretrial motions and the court's rulings on those motions." Under these circumstances, the trial judge could not have accepted the plea and was required to direct a plea of not guilty to the charge. *State v. O'Leary*, 302 S.C. 17, 393 S.E. (2d) 186 (1990).

## D.

Finally, Wilkins contends the trial judge erred in refusing to accept his renewed tenders of a plea of guilty to PWID when his motion for mistrial was denied after the solicitor's opening statement and again at the conclusion of the State's case. We disagree. Wilkins had no absolute right to have the trial judge accept his offer of a guilty plea to only one count in the multi-count indictment here involved. *State v. Whitted*, 279 S.C. 260, 262-63, 305 S.E. (2d) 245, 247 (1983).

Affirmed.

GARDNER, J., and LITTLEJOHN, Acting Judge, concur.